IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. JENSEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

STEVEN D. JENSEN, APPELLANT.

Filed August 13, 2024.    No. A-23-939.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Joseph Kuehl, of Lefler, Kuehl, and Burns Law Office, for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Steven D. Jensen appeals from the denial of his motion for postconviction relief without an evidentiary hearing. He contends that the district court erred in failing to grant him an evidentiary hearing on his claims that, during his trial for first degree sexual assault, his trial counsel was ineffective in failing to impeach the victim on her prior inconsistent statements regarding when the sexual assault occurred and whether C.S. maintained a friendship with a named friend throughout high school. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

### TRIAL AND SENTENCING

Between the dates of June 1, 2003, and February 15, 2005, Jensen, who was over 19 years old, allegedly had sexual intercourse with C.S., who was under the age of 16. C.S. reported the

assault in 2019 after which Jensen was charged with first degree sexual assault. During the jury trial, which was held in October 2021, a significant amount of evidence was presented on whether the alleged sexual assault occurred when the victim was under the age of 16. This court summarized the trial evidence in our determination of Jensen's direct appeal:

> The victim testified that she met Jensen through Gillespie-Jensen sometime between the end of her freshman year to the beginning of her sophomore year of high school. At that time, Gillespie-Jensen was dating James Ullman who the victim described as having grey hair and being older than her parents who were in their mid-to-late 30's. The victim and Gillespie-Jensen did not dispute that Ullman gave them rides, provided them with money for shopping trips, had them model for him afterwards, provided them with alcohol, and had sexual involvement with both girls. The victim testified that Gillespie-Jensen introduced her to Jensen at Ullman's residence so that the victim and Jensen could "get together" which the victim understood to mean something sexual. The victim testified that, at some point during that evening, Jensen penetrated her. At that time, the victim testified she was under the age of 16 and Jensen was over the age of 19. The victim testified that she did not report the incident until 2019 when she learned that Ullman was a school bus driver, which made her concerned for the safety of other children, and that she felt it was necessary to include in her report the encounter with Jensen to provide the police the "whole truth." The victim stated that she felt bad having to also report Jensen because she knew that Jensen and Gillespie-Jensen were now married and were attempting to have a child.

> Gillespie-Jensen testified that she met the victim when they were in junior high school; that the victim was a year older than her; that she met Ullman around that same time frame; and that she met Jensen online when she was 14 years old, but that she did not meet Jensen in person until after she was 16 years old. During her testimony, defense counsel offered multiple photographs into evidence depicting a timeline of events where Gillespie-Jensen and the victim were together. Based upon this timeline of events, Gillespie-Jensen testified that she believed the victim was over the age of 16 at the time Jensen penetrated her. On cross-examination, Gillespie-Jensen admitted that she was untruthful during her initial interview with Sergeant German concerning when she met Jensen, whether Jensen knew Ullman, and whether Jensen knew the victim.

> The State called the victim's mother as a rebuttal witness. During this line of testimony, the State asked questions about a photograph of the victim in her high school dance uniform which Gillespie-Jensen used in her timeline to suggest the event depicted occurred during the victim's senior year. The victim's mother testified that the victim only participated in dance during her freshman year and the photo would have been taken during the victim's freshman year. This testimony was consistent with the victim's testimony on the same subject.

*State v. Jensen*, No. A-22-045, 2022 WL 17814911, at *1-2 (Neb. App. Dec. 20, 2022) (selected for posting to court website), (petition for further review denied March 1, 2023). The jury convicted Jensen of first degree sexual assault and Jensen was sentenced to 6 to 12 years' imprisonment.

Jensen, represented by different appellate counsel, timely appealed his conviction and sentence assigning as error, inter alia, that his trial counsel was ineffective in failing to properly impeach C.S. on prior inconsistent statements concerning when C.S. met Jensen and whether C.S. maintained a relationship with Gillespie-Jensen throughout high school. As we noted in our opinion, "Jensen argues that counsel's failure to properly impeach the victim governing this subject matter compromised counsel's ability to show the jury that the victim was not a reliable historian as it relates to the age of the victim at the time of Jensen's alleged sexual assault." *State v. Jensen*, No. A-22-045, 2022 WL 17814911, at *4.

This court affirmed Jensen's conviction and sentence and found that his assignments of error were without merit, except for Jensen's claims that trial counsel was ineffective for failing to properly impeach the victim for her prior inconsistent statements regarding when she met Jensen and whether she maintained a relationship with Gillespie-Jensen throughout high school. We determined that the record on direct appeal was insufficient to address those ineffectiveness claims regarding trial counsel's alleged failure to properly impeach C.S.

POSTCONVICTION

Jensen timely filed this motion for postconviction relief alleging that he was denied effective assistance of counsel based upon trial counsel's failure to impeach the victim on prior inconsistent statements about when the sexual assault occurred, that the sole challenge at trial was the timing of the sexual assault, and that had counsel properly impeached the victim the admissions "would certainly have influenced the jury" thereby resulting in "a different verdict." He also alleged that trial counsel was ineffective in failing to impeach the victim regarding prior inconsistent statements about whether or not the victim maintained a friendship with Gillespie-Jensen throughout high school. He contends that "[t]here was overwhelming evidence (including C.S.'s prior inconsistent statements) that C.S. and . . . Gillespie-Jensen were friends throughout high school" and that "[i]n a case that came down to either believe C.S or . . . Gillespie-Jensen, this was a very significant failure on the part of trial counsel and would have led the jury to believe . . . Gillespie-Jensen over C.S."

In October 2021, the district court denied Jensen's motion for postconviction relief without an evidentiary hearing. The district court specifically found:

> [Jensen's] first contention is that trial counsel failed to effectively impeach C.S. on her prior statements to law enforcement and her deposition about when the assault happened. The record actually refutes this claim, however, and shows that trial counsel was able to get the information into evidence and impeach C.S. After reviewing the postconviction motion and the record before it, the Court finds that the same demonstrates that [Jensen] has not met his burden to articulate facts which would show he is entitled to relief based on this contention. Further, the Court finds that [Jensen's] postconviction motion does not warrant an evidentiary hearing under either of the <u>Strickland</u> prongs. [Jensen] failed to allege how trial counsel's actions fell below an objective standard of reasonableness and, further, how the deficient performance actually prejudiced the case.
>
> With regard to [Jensen's] second contention, he asserts that trial counsel failed to effectively impeach C.S. on her prior inconsistent statements about whether or not she

maintained a friendship with . . . Gillespie-Jensen throughout high school. The Court finds that this claim is procedurally barred as this is a claim that was or could have been litigated on direct appeal. . . . Further, the Court finds that [Jensen] failed to allege specific facts which would show he is entitled to relief. His claim is vague and ambiguous, and not supported by facts. Instead, the claim is merely conclusory in nature.

Jensen has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Jensen contends that the district court erred in failing to grant him an evidentiary hearing on his claims that his trial counsel was ineffective in failing to impeach C.S. on her prior inconsistent statements regarding when the sexual assault occurred and whether C.S. maintained a friendship with Gillespie-Jensen throughout high school.

## STANDARD OF REVIEW

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights as to render the judgment void or voidable and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *State v. Boeggeman*, 316 Neb. 581, 5 N.W.3d 735 (2024).

## ANALYSIS

Jensen contends that the district court erred in failing to grant him an evidentiary hearing on his claims that his trial counsel was ineffective in failing to impeach C.S. on her prior inconsistent statements regarding when the sexual assault occurred and whether C.S. maintained a friendship with Gillespie-Jensen throughout high school.

As this court recently stated in *State v. Jackson*, 32 Neb. App. 563, 571-72, 2 N.W.3d 203, 211 (2024) (petition for further review denied February 16, 2024):

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Galindo*, 315 Neb. 1, 994 N.W.2d 562 (2023). An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Galindo, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for his or her

counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. See *id.*

And, as this court noted in *State v. Yates*, 32 Neb. App. 555, 560-61, 2 N.W.3d 197, 202 (2024) (petition for further review denied March 14, 2024):

> The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id.* An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

We note that the allegations required for ineffective assistance of counsel claims differ based upon whether the claims are raised on direct appeal or postconviction. When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). In connection with a postconviction claim, the claimant must allege specific allegations of both ineffective assistance of counsel and prejudice. See, *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022) (allegations in motion for postconviction relief must be sufficiently specific for district court to make preliminary determination as to whether an evidentiary hearing is justified); *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016) (motion for postconviction relief must adequately allege how defendant was prejudiced by counsel's actions; prejudice is shown by establishing that *but for* deficient performance of counsel, there is reasonable probability that outcome of case would have been different); *State v. Abdulkadir*, 293 Neb. 560, 878 N.W.2d 390 (2016) (in filing motion for postconviction relief, to be entitled to evidentiary hearing, defendant's postconviction motion must state facts actually amounting to prejudice); *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015) (motion which alleges only conclusions of facts or law is insufficient).

Applying these standards to this case, we note that in his direct appeal, Jensen was only required to make specific allegations of the conduct that he claimed constituted deficient performance by trial counsel; he was not required to allege prejudice. Based upon that standard, we found that, although the record on direct appeal was insufficient to allow this court to address Jensen's allegations that trial counsel was ineffective for failing to properly impeach C.S. regarding her prior inconsistent statements about when she met Jensen and whether she maintained

a relationship with Gillespie-Jensen through high school, his allegations were sufficient to preserve those claims.

However, in his motion for postconviction relief, Jensen was required to allege both specific allegations of both ineffective assistance of counsel and prejudice. We now isolate Jensen's allegations of ineffective assistance of counsel and the alleged prejudice in order to determine whether the court erred in failing to provide Jensen with an evidentiary hearing.

PRIOR INCONSISTENT STATEMENTS REGARDING
WHEN ASSAULT OCCURRED

Jensen first assigns and argues that C.S. testified at trial that she first met Ullman when she was 13 or 14 years old and that it was "maybe a year" after she met Ullman that she first met Jensen. As Jensen acknowledges, that would squarely fit C.S.' narrative that she was under the age of 16 when the incident occurred. But Jensen specifically alleges and argues that police reports note that C.S. stated to law enforcement "that it was a year, if not two years after she met Ullman." And, in her deposition, C.S. testified that she met Jensen a "couple of years" after she met Ullman. At trial, C.S. testified that she did not remember making that statement to law enforcement. Jensen's counsel attempted to impeach C.S. with the aforementioned statements by reading from them, but the court sustained the State's objections for improper impeachment. Jensen argues that his trial counsel's failure to impeach C.S. with these prior statements constituted ineffective assistance of counsel and prejudiced Jensen in that, had the jury been able to hear her prior statements as contained in the police report and her deposition, the outcome of his trial would have been different. We disagree.

As we previously noted:

> To show prejudice, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

*State v. Jackson*, 32 Neb. App. 563, 572, 2 N.W.3d 203, 211 (2024).

We find that Jensen's specific allegations, as a matter of law, fail to demonstrate prejudice. In making that finding, we first note that C.S. specifically testified that she did not remember making the statement to law enforcement. Second, because C.S. testified that she was 13 or 14 years old when she first met Ullman, her prior statements do not necessarily contradict the ultimate fact that she was under the age of 16 when she met Jensen. Third, the statement made by C.S. during her deposition that she met Jensen a "couple of years" after she met Ullman does not contradict her testimony as to when she first met Jensen. And fourth, notwithstanding this loose timeline, C.S. unequivocally testified that she knew that the sexual encounter with Jensen took place before her 16th birthday because she was dating her boyfriend when she turned 16 and she was not dating him at the time that Jensen sexually assaulted her. As the State notes in its brief, C.S.'s boyfriend "was the father of her child, and thus, it is understandable that she would remember that she was dating him when she turned 16." Brief for appellee at 12.

When taken together with C.S.' consistent testimony that the sexual assault took place anywhere from the end of her freshman year to the beginning of her sophomore year, we find that Jensen's claim that his trial counsel was ineffective for failing to impeach C.S. more directly with the two prior statements does not show a probability that the outcome of his trial was undermined. As such, we find that the district court did not err in failing to grant an evidentiary hearing regarding this assignment of error.

PRIOR INCONSISTENT STATEMENT REGARDING
FRIENDSHIP WITH GILLESPIE-JENSEN

Jensen separately assigns and argues that trial counsel was ineffective for failing to impeach C.S. with a statement by C.S. governing the timeline of events. He argues that C.S. testified that she met Gillespie-Jensen while in 8th grade but that they drifted apart and did not remain friends when she was in high school. Jensen argues that, in her deposition, C.S. testified that they remained friends for "a few years" after meeting. Jensen argues that prior impeachment governing C.S.' prior inconsistent statement would have impacted the outcome of the trial. Again, we disagree.

Upon our review of the record, C.S. testified during the trial that she and Gillespie-Jensen remained friends during high school and even after high school. She explained that they drifted apart, likely because they attended different high schools. Additionally, Jensen's trial counsel offered several pictures during the trial demonstrating C.S.' and Gillespie-Jensen's friendship during high school and asked questions related to their interactions. Taken together, we find no prejudice associated with Jensen's counsel failing to impeach C.S. with her deposition statement that she and Gillespie-Jensen remained friends "for a few years" after they met. We find that the district court did not err in failing to grant an evidentiary hearing governing this specific assignment of error.

CONCLUSION

Having considered and rejected Jensen's claims of ineffective assistance of trial counsel, we affirm the district court's denial of Jensen's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.