IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. HARRIS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

MARRICKIO D. HARRIS, APPELLANT.


Filed November 19, 2024.    No. A-23-718.


Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Marrickio D. Harris, pro se.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.


RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Marrickio D. Harris appeals from the order of the district court for Lancaster County, which denied his motion for postconviction relief without an evidentiary hearing. The court also denied Harris' motion for appointment of counsel and for declaratory relief, as well as his pleading entitled "OBJECTION AND MOTION FOR JUDGE WRITTEN PLEADINGS [sic]" (motion for judge-written findings). On appeal, Harris assigns error to each of these rulings. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

### 1. CONVICTION AND DIRECT APPEAL

Following a jury trial in June 2019, Harris was convicted of possession with intent to deliver 10 to 27 grams of cocaine; possession with intent to deliver cocaine base; and possession

of money used in violation of Neb. Rev. Stat. § 28-416 (Cum. Supp. 2018). The district court found him to be a habitual criminal and sentenced him to a total of 15 to 20 years' imprisonment.

On direct appeal, Harris claimed that the district court erred in (1) denying his request to conduct his own defense by forcing him to accept court-appointed counsel, (2) threatening to revoke his bond, (3) allowing the State to file an amended information the day of trial, (4) denying a proposed jury instruction, and (5) denying Harris' motion for new trial. Harris also claimed that he received ineffective assistance of trial counsel when his counsel failed to (a) object to the revocation of his bond, (b) request a continuance after his objection to the filing of the amended information was overruled, (c) cross-examine a witness (Rebecca Fox), and (d) communicate adequately with Harris once he was appointed to represent Harris. This court found no error or abuse of discretion by the district court. We found the record insufficient on direct appeal to address Harris' claim about his trial counsel's alleged failure to communicate with him. Harris' other claims of ineffective assistance of trial counsel were refuted by the record. Accordingly, we affirmed Harris' convictions and sentences. See *State v. Harris*, No. A-19-973, 2020 WL 6140524 (Neb. App. Oct. 20, 2020) (selected for posting to court website). We note that Harris was represented on direct appeal by different counsel than trial counsel.

## 2. POSTCONVICTION PROCEEDINGS

On January 26, 2022, Harris, now self-represented, filed a 90-page motion for postconviction relief, setting forth 28 claims for relief alleging trial court error as well as ineffective assistance of trial and appellate counsel. Harris filed a motion in February, seeking appointment of postconviction counsel. This motion also included a request for declaratory relief, in which Harris sought a declaration that the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2016) "as-applied to [him] and all similarly situated [self-represented] postconviction movants" is unlawful and violates his due process and equal protection rights under the U.S. Constitution and the Nebraska Constitution.

On December 7, 2022, the district court entered an order, giving the State 45 days to file a response to Harris' postconviction motion. The court overruled Harris' motion for appointment of counsel "without prejudice"; it also overruled Harris' "purported motion for declaratory relief." We note that the court entered a subsequent order on August 10, 2023, finding that Harris' motion for appointment of counsel and for declaratory relief did not comply with local court rules and that the motion was "deemed abandoned" and was dismissed.

The State filed a response, asking the district court to dismiss Harris' postconviction motion without an evidentiary hearing. At the conclusion of a hearing on June 5, 2023, the court asked the parties to submit proposed orders addressing the State's request to deny an evidentiary hearing on Harris' postconviction motion. Harris did not object to the procedure, and both parties confirmed that they could have their proposed orders to the court within 14 days.

On August 10, 2023, the district court entered an order, denying Harris' motion for postconviction relief without an evidentiary hearing. The court addressed each of Harris' claims, and it determined that they were either procedurally barred, refuted by the record, or did not otherwise warrant an evidentiary hearing. We have set forth further details of the court's analysis below.

On September 6, 2023, Harris filed a motion for judge-written findings. In this motion, Harris objected to the State "preparing pleadings for the [c]ourt." Specifically, he argued that in its August 10 order, the district court "mechanically adopted verbatim or 'rubber stamped' the [State's] ghostwritten and submitted [order]." He argued that the court's adoption of the State's proposed order was "fundamentally unfair" and in violation of his constitutional rights to due process. He asked the court to sustain his objection, vacate the August 10 order, and enter an order written by the judge in its place.

On September 7, 2023, Harris filed a notice of appeal from the district court's denial of his motion for postconviction relief "and other related postconviction motions." He also filed a motion to proceed in forma pauperis on appeal and a poverty affidavit.

On September 15, 2023, the district court entered an order finding that Harris' notice of appeal divested it of jurisdiction to consider Harris motion for judge-written findings and further stating that the motion was "denied and dismissed."

## III. ASSIGNMENTS OF ERROR

Harris asserts that the district court erred in (1) denying his motion for postconviction relief without an evidentiary hearing, (2) denying his motion for appointment of counsel and declaratory relief, and (3) denying his motion for judge-written findings.

## IV. STANDARD OF REVIEW

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights as to render the judgment void or voidable and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *State v. Boeggeman*, 316 Neb. 581, 5 N.W.3d 735 (2024).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which an appellate court reviews independently of the lower court's ruling. *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023).

An appellate court reviews the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion. *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023).

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

## V. ANALYSIS

### 1. DENIAL OF POSTCONVICTION MOTION
### WITHOUT EVIDENTIARY HEARING

Harris asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. In his postconviction motion, Harris set forth 28 separate claims, alleging trial court error (claims Nos. 1-2), ineffective assistance of trial counsel (claims Nos. 3-15), and ineffective assistance of appellate counsel (claims Nos. 16-28). On appeal to this court,

Harris presents arguments with respect to each of those claims. Before addressing Harris' arguments, we first set forth the general principles of law applicable to our analysis.

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Davis*, 317 Neb. 59, 8 N.W.3d 247 (2024). The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *State v. Cox, supra*. An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *State v. Jackson*, 32 Neb. App. 563, 2 N.W.3d 203 (2024).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The likelihood of a different result must be substantial, not just conceivable. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). The two prongs of the test under *Strickland v. Washington, supra*, may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023).

(a) Trial Court Error

In claim No. 1, Harris alleged that the trial court erred in denying his requests to represent himself at trial in violation of his constitutional rights. In claim No. 2, Harris alleged that the judges who presided over the pretrial and trial proceedings had a personal bias against him because he is African American, leading them to deprive him of his constitutional rights in various ways, including by denying his requests to represent himself, threatening to revoke his bond, and allowing the State to file an amended information on the day of trial. In his postconviction motion and in his brief on appeal, Harris argues that these two claims amount to "structural error," requiring an "'automatic reversal.'" Brief for appellant at 17-18.

We agree with the district court's determination that the issues of trial court error raised in Harris' postconviction claims Nos. 1 and 2 are procedurally barred. A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and which were or could have been litigated on direct appeal. *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023). Although not phrased in terms of racial bias by the trial judges, Harris claimed on direct appeal that the trial court erred by denying his requests to represent himself, threatening to revoke his bond, and allowing the State to file an amended information on the day of trial. Those claims

- 4 -

were rejected by this court. See *State v. Harris*, No. A-19-973, 2020 WL 6140524 (Neb. App. Oct. 20, 2020) (selected for posting to court website). In these postconviction proceedings, Harris has simply rephrased those claims in terms of alleged judicial bias. He does not allege that any of these issues were unknown at the time of his direct appeal. A defendant cannot use a motion for postconviction relief to collaterally attack issues that were decided against him or her on direct appeal. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015). See, *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022), *cert. denied* ___ U.S. ___, 143 S. Ct. 1026, 215 L. Ed. 2d 192 (2023) (when issue could have been raised on direct appeal, it is procedurally barred from postconviction relief, no matter how issues may be phrased or rephrased). The issues of trial court error raised in claims Nos. 1 and 2 are all issues that were or could have been brought on direct appeal.

(b) Ineffective Assistance of Trial Counsel

*(i) Procedurally Barred*

In postconviction claims Nos. 3 through 15, Harris raised claims of ineffective assistance of trial counsel. Out of these claims, only claim No. 4 (alleging his trial counsel's failure to adequately communicate with him) was also raised on direct appeal. The district court determined that Harris' claim No. 3 and his claims Nos. 5 through 15 were procedurally barred because they were not brought on direct appeal. We agree. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Zitterkopf*, 317 Neb. 312, 9 N.W.3d 896 (2024).

*(ii) Raised on Direct Appeal*

In his postconviction claim No. 4, Harris alleged that his trial counsel was ineffective for failing to communicate adequately with him once he was appointed to represent Harris. The district court found the record sufficient to refute this claim. Harris previously assigned error on direct appeal to his trial counsel's failure to adequately communicate with him, arguing that his trial counsel failed, among other things, to inform him about jurisdiction, to timely inform him of the State's intent to amend the information with a habitual criminal enhancement, and to discuss the contents of the presentence investigation report with him. We found the record insufficient to address the claim. We note that our finding on direct appeal does not mean that Harris is necessarily entitled to an evidentiary hearing upon raising in his postconviction motion the issue of his trial counsel's failure to communicate. See *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019) (finding on direct appeal that existing record is insufficient to determine claim of deficient conduct does not speak to whether existing record will be sufficient to affirmatively refute prejudice once claim is alleged on postconviction).

In his postconviction motion, Harris argued generally that his trial counsel's communications were inadequate in that he failed to inform Harris about jurisdiction, to timely inform him about the State's intent to amend the information to add the habitual criminal allegation, and to discuss the contents of the presentence investigation report with him prior to sentencing. Harris' more specific allegations focus on trial counsel's alleged failure to communicate to him any formal plea offers from the State prior to the day of trial. Harris argued

in his postconviction motion that if his trial counsel had communicated the State's plea offers to him prior to the day of trial, he would not have gone to trial. The district court found this claim was refuted by the record, noting Harris' request to speak on the record at the start of his June 14, 2019, trial, during which time Harris stated that he had "been directed on numerous occasions . . . with offers and deals from the prosecutor by this attorney." The district court's assessment is consistent with our own review of the record, and in our memorandum opinion addressing Harris' direct appeal, we noted the prosecutor's comment that the State had communicated an extension of its original plea offer (made on May 15) to Harris' attorney the previous day and the prosecutor's understanding that Harris had decided not to accept the offer. Because the record affirmatively refutes Harris' claim that his trial counsel failed to communicate any plea offers to him prior to trial, the district court did not err in denying an evidentiary hearing on this claim. See *State v. Jackson*, 32 Neb. App. 563, 2 N.W.3d 203 (2024) (evidentiary hearing not required when records and files affirmatively show that defendant is entitled to no relief).

(c) Ineffective Assistance of Appellate Counsel

In his postconviction claims Nos. 16 through 28, Harris raises allegations of ineffective assistance of appellate counsel, arguing that his appellate counsel was ineffective in failing to assign as error on direct appeal that his trial counsel was ineffective in various regards. He also argues that his appellate counsel was ineffective for failing to assign error to the sufficiency of the evidence to support his convictions. This postconviction proceeding was Harris' first opportunity to assert the ineffectiveness of his appellate counsel. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021). When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on direct appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id.*

*(i) Failure to Depose Witnesses, Subpoena*
*Surveillance Video, and Subpoena Witness*

Claim No. 16 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to investigate and depose Fox and three named police officers, failure to subpoena surveillance video from businesses near where the police encounter occurred, and failure to seek suppression of illegally obtained statements and suspected controlled substances. Fox and two of the officers referenced in this claim (the bike patrol officers who contacted Harris and Fox in a Lincoln, Nebraska, parking lot upon smelling the odor of marijuana coming from a vehicle in the parking lot) all testified at trial. The third officer referenced did not testify, and claim No. 20 alleges appellate counsel's ineffectiveness in failing to assign error on to trial counsel's failure to subpoena this third police officer to testify.

At trial, the bike patrol officers indicated that they approached the vehicle, identified Harris as the driver and Fox as the passenger, had Harris and Fox step out of the vehicle, confirmed that

the vehicle smelled of marijuana, and searched the vehicle after observing a bottle of alcohol on the floor of the front passenger area. The search yielded more alcohol; what appeared to be two joints of marijuana, a baggie of cocaine, a baggie of cocaine base, and additional marijuana; and other drug paraphernalia. Field tests of the suspected cocaine (and later lab testing) confirmed that the baggies contained certain amounts of cocaine and cocaine base, respectively. When the officers questioned Harris and Fox, Harris stated that Fox was not involved; Fox denied that the drugs were hers. Harris was arrested, and a search of Harris revealed $1,660 in cash and two cell phones. In her trial testimony, Fox initially stated that she was seated in the passenger seat when contacted by police and she was asked to step out of the car. Later, she stated that she and Harris "were actually walking already out of the car," but upon further questioning, she agreed that she was "just getting out of the car" when approached by the officers.

In support of both of these postconviction claims, Harris argues that investigation by his trial counsel would have discredited the evidence that Harris and Fox were in the vehicle when contacted by the bike patrol officers. Based on this assertion, he argues that there was no probable cause for officers to search the vehicle or to arrest and search Harris. He also argues that he was not given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), before or after being placed in custody. Accordingly, he argues that a motion to suppress the physical evidence seized and his statements would have been successful and the charges against him would have been dismissed. The district court determined that Harris' trial counsel was not ineffective and Harris was not prejudiced by the failures alleged in claim Nos. 16 and 20. We agree.

With respect to the alleged failure to take depositions, the district court noted Fox's trial testimony that she was in the vehicle with Harris just before being approached by police, as well as the testimony from the bike patrol officers that Harris and Fox were still in the vehicle when the officers approached. We agree with the court's determination that Harris does not provide any evidence to support a conclusion that Fox and the bike patrol officers would have provided a different version of events in a deposition than they did at trial. Although Harris alleges that surveillance video from one particular business "and/or any other surveillance videos from surrounding businesses in this same area" would have confirmed that he and Fox were not in any vehicles when stopped by police, he does not identify which other businesses his attorney should have contacted or make more than conclusory allegations about the existence of any such video. Finally, even if Harris' trial counsel had subpoenaed surveillance video from area businesses or if the third police officer had testified to an alternate version of events, we note, as did the district court, that there was ample evidence at trial to establish that Harris was in the driver's seat of the vehicle when approached by officers. Harris has not shown that he was prejudiced by trial counsel's failure to depose these witnesses, locate any surveillance video, or call the third officer to testify at trial.

The district court did not directly address Harris' allegations that his trial counsel should have sought to suppress the physical evidence seized from the vehicle and statements made by Harris, but Harris has not shown that his trial counsel was ineffective in that regard either. The trial testimony of Fox and the bike patrol officers clearly reflects that Harris and Fox were in the vehicle before the officers arrived and smelled marijuana coming from the vehicle, which led to the officers' contact with the vehicles' occupants, the search of the vehicle and the discovery of

the drugs in it, and the subsequent search of Harris and the discovery of the cash and cell phones on his person. The odor of marijuana coming from the vehicle provided the officers with probable cause for the search. See *State v. Vaughn*, 314 Neb. 167, 989 N.W.2d 378 (2023), *cert. denied* ___ U.S. ___, 144 S. Ct. 241, 217 L. Ed. 2d 109 (when officer with sufficient training and experience detects odor of marijuana emanating from vehicle that is readily mobile, odor alone furnishes probable cause to suspect contraband will be found in vehicle and vehicle may be lawfully searched under automobile exception to warrant requirement). And, the discovery of drugs in the vehicle provided probable cause for Harris' arrest and the search of his person incident to that arrest. See, also, *State v. Hammond*, 315 Neb. 362, 996 N.W.2d 270 (2023) (person may be arrested without warrant when officer has probable cause to believe person either has committed felony or has committed misdemeanor in officer's presence; warrantless search exceptions include searches incident to valid arrest).

Harris does not specifically identify in his postconviction motion any statements that his trial counsel should have sought to suppress. In its brief, the State notes the evidence at trial that when the officers spoke with Harris and Fox about what they found in the vehicle, Harris told them that Fox was "not involved in any manner." The State argues that the record does not show that this statement was made during a custodial interrogation that would have required *Miranda* warnings. See *State v. Vaughn, supra* (safeguards provided by *Miranda v. Arizona*, come into play whenever person in custody is subjected to either express questioning or its functional equivalent). The State also argues, citing *United States v. Patane*, 542 U.S. 630, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004) (generally holding that physical evidence need not necessarily be excluded following *Miranda* violation) that even if Harris' statement should have been suppressed, the physical evidence would have still been admissible. We agree.

The record shows that Harris was the driver of the vehicle; that the baggies of cocaine and cocaine base were located in a larger bag found on the floor of the driver's side area of the vehicle; and that Fox denied the drugs were hers. Under the criminal narcotics statutes, possession may be either actual or constructive. *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021). Two persons may have constructive possession, or one may have actual possession and the other have constructive possession. *Id.* Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it. *Id.* Possession of a controlled substance means either (1) knowingly having it on one's person or (2) knowing of the substance's presence and having control over the substance. *Id.* Mere presence at a place where the item in question is found is not sufficient to show constructive possession. *Id.* Harris' postconviction motion does not show that suppression of his statement would have led to suppression of physical evidence seized from the vehicle or that the result of trial, absent Harris' statement would have been different.

Because Harris cannot show that his trial counsel was ineffective for failing to investigate and depose Fox and three named police officers, subpoena surveillance video, subpoena the third officer to testify at trial, or move to suppress the physical evidence and his statements, he cannot show that his appellate counsel was ineffective for failing to raise these claims on direct appeal. The district court did not err in denying claims Nos. 16 and 20 without an evidentiary hearing.

*(ii) Failure to Request* Faretta *Hearing*

Claim No. 17 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to move the trial court for a hearing pursuant to *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) for Harris to voluntarily, knowingly, and intelligently waive his right to counsel after he was found competent to stand trial. He argues that if trial counsel had moved for such a hearing, there is a reasonable probability that Harris would have been allowed to proceed with self-representation and the result of the proceeding would have been different. The district court determined that this claim was procedurally barred. We agree that this claim is procedurally barred and/or refuted by the record. On direct appeal, this court addressed the issue of the trial court's denial of Harris' request to conduct his own defense and to instead accept court-appointed counsel. We observed that the competence that is required of a defendant seeking to waive his or her right to counsel is the competence to waive the right, not the competence to represent himself or herself. Given the way Harris presented himself on the day of trial, we found sufficient evidence to support the court's determination that Harris was not competent to represent himself. See *State v. Harris*, No. A-19-973, 2020 WL 6140524 (Neb. App. Oct. 20, 2020) (selected for posting to court website). Claim No. 17 is a collateral attack on that determination. See *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015) (defendant cannot use motion for postconviction relief to collaterally attack issues that were decided against him or her on direct appeal).

Given the trial court's determination that Harris was not competent to represent himself at trial, Harris has not shown a reasonable probability that he would have been allowed to proceed with self-representation had his attorney filed a motion for him to waive counsel, let alone a reasonable probability that the result of the proceeding would have been different had Harris represented himself at trial. And, he cannot show that his appellate counsel was ineffective for failing to raise this claim on direct appeal. The district court did not err in denying claim No. 17 without an evidentiary hearing.

*(iii) Failure to Seek Recusal of Judges*

Claim No. 18 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to seek recusal of the judges who presided over the pretrial and trial proceedings. Harris argues that these judges should have been recused because they revoked his bond and did not allow him to represent himself due to his race. Harris argues that if his trial counsel had sought recusal of these judges, there is a reasonable probability that his motion would have been granted, a new judge appointed, and he would have received a fair trial and most likely would have been acquitted on all counts. The district court correctly concluded that Harris' conclusory allegations did not warrant an evidentiary hearing.

A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). Judicial recusal is required if a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *Id.* Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge. *Id.* The district court correctly observed that Harris' conclusory assertion that the judges issued rulings against him

because of his race do not call into question their impartiality. His motion contains no supporting facts to establish judicial bias. The district court did not err in denying an evidentiary hearing on this claim. See *State v. Jackson*, 32 Neb. App. 563, 2 N.W.3d 203 (2024) (evidentiary hearing not required when postconviction motion alleges only conclusions of fact or law without supporting facts).

### (iv) Failure to Independently Test Controlled Substances and Obtain Expert Witness

Claim No. 19 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to seek independent testing of the controlled substances and to otherwise investigate their actual weight and purity. Claim No. 21 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to have an expert witness testify to the weight and purity of the controlled substances. These claims focus on Harris' unsubstantiated assertions that the evidence in this case was tampered with by a former Nebraska State Patrol laboratory employee and that independent testing of the controlled substances and testimony by a forensic expert would have shown that the weight and purity of the controlled substances in this case were "substantially less" than the State alleged.

We first note, as did the district court, that when reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023). And, the failure of a calculated trial tactic or strategy to work out as planned will not establish that counsel was ineffective. *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). In denying claims Nos. 19 and 21 without an evidentiary hearing, the district court observed that challenging the weight and purity of the controlled substances in this case would not have been productive. We agree.

Harris was charged with two controlled substance offenses: possession with intent to deliver 10 to 27 grams of cocaine and possession with intent to deliver cocaine base. Only the first of these charges required the State to prove the weight of the controlled substance as an element of the offense. Field tests of the suspected cocaine seized in this case found that one baggie contained 16.2 grams of cocaine and the other contained 7.7 grams of cocaine base. The baggies were tested at the State Patrol crime lab and their contents confirmed as cocaine, with one baggie containing 15.12 grams, plus or minus .07 grams, of cocaine, and the other containing 6.0478 grams, plus or minus .0046 grams, of cocaine base. The district court noted trial testimony from the crime lab analyst who performed the testing that she weighed the controlled substances without the baggies. The court also noted testimony from the bike patrol officer who did the field testing that the difference in weight between his calculation and the lab's was likely due to the baggies' weight. The court stated that the controlled substances "would needed to have weighed almost fifty percent less than presented at trial to have been beneficial to [Harris]," and it found no indication from the record that the weight of the controlled substances seized in this was substantially in question. The court found it was a reasonable trial strategy not to have the controlled substances independently weighed.

The district court then found Harris' claim that the controlled substances had been tampered with was a conclusion of fact unsupported by the record or evidence. The court found

- 10 -

nothing in the record to indicate that the former State Patrol lab employee in question handled the evidence in this case. The court concluded, however, that even if that employee had handled the evidence, the record affirmatively shows that the evidence was not compromised. The court noted testimony from the crime lab analyst who conducted the testing, including her testimony that the evidence bag containing the baggies of controlled substances was sealed when she received it, that she resealed the evidence bag when she was done testing the substances, and that the evidence bag was in substantially the same condition at trial as when she resealed it. The court also noted testimony from the police property technician, who took the evidence bag of controlled substances to and from the crime lab, indicating that the bag was in substantially the same condition when it returned from the lab as when she delivered it there. The court concluded that Harris was not prejudiced by trial counsel's failure to independently weigh the controlled substances.

The district court's review of the record is consistent with our own. The conclusory allegations in Harris' motion are insufficient to show that he was prejudiced by trial counsel's failure to conduct independent testing of the controlled substances or obtain an expert forensic witness. Harris does not allege where his trial counsel should have had the substances tested, what the testimony of an expert would have been, and does nothing to show that the outcome of the trial would have been different had his trial counsel taken these steps. Because Harris cannot show that his trial counsel was ineffective, he cannot show that his appellate counsel was ineffective for failing to raise claims No. 19 and 21 on direct appeal. The district court did not err in denying these claims without an evidentiary hearing.

*(v) Failure to Object to Testimony*
*About Items Seized With Drugs*

Claim No. 22 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to object to the testimony of two police officers about a scale, razor blade, and playing cards, that were seized with the controlled substances. Harris argues that these items were not depicted in any of the exhibits received at trial. He argues further that if his trial counsel had objected on the bases of foundation, hearsay, and assuming facts not in evidence, there is a reasonable probability that the testimony about these items would have been excluded, and Harris most likely would have been acquitted of all counts.

The district court found this claim refuted by the record. One of the bike patrol officers testified that he located a scale, razor blade, and playing cards while searching a bag found in the vehicle. He testified that a scale with the presence of narcotics suggested the sale of narcotics, and that the razor blade in the presence of a scale and narcotics suggested that it was a tool used to separate narcotics such as cocaine. We agree with the district court that this testimony was not objectionable for lack of foundation, hearsay, or assuming facts not in evidence. Another police officer, who had been part of a drug task force for 17 years and was familiar with drug dealing practices, opined based on his training, experience, and the factors present in the case, that the presence of the scale and razor blade, among other factors, were indicative of drug dealing. Likewise, we agree with the district court that Harris' trial counsel was not ineffective for failing to object to this testimony about the items seized with the controlled substances. Because Harris cannot show that his trial counsel was ineffective for failing to object to this testimony at trial, he

cannot show that his appellate counsel was ineffective for failing to raise this claim on direct appeal. The district court did not err in denying claim No. 22 without an evidentiary hearing.

*(vi) Failure in Advising Harris About Right to Testify*

Claim No. 23 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to abide by Harris' desire to testify on his own behalf at trial. Harris argues that his attorney told him at trial that he did not want Harris to testify because he "did not know anything about Harris' case." He argues further that he was willing to testify, despite his previous convictions, and that if he had been called to testify, he would have testified that he and Fox were walking together when detained by police, that they were not in any vehicles when stopped by the officers, and that one officer "unlawfully reached into Harris' pocket to press the keyfob button" to unlock the "unoccupied vehicle" without Harris's consent. He also argues that he would have testified that he borrowed the vehicle from a particular friend, that he did not know anything about the drugs located in the vehicle, and $1,500 of the money found on his person was from the sale of a set of four racing wheels with tires to another named individual. He argues that if he had been called to testify, there is a reasonable probability that his testimony would have discredited all of the bike patrol officers' testimony and he would have most likely been acquitted on all counts.

A defendant has a fundamental constitutional right to testify, and the right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Id.* Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable. *Id.*

The district court determined that trial counsel was not ineffective in advising Harris not to testify and that the record affirmatively shows trial counsel did not interfere with Harris' freedom to testify. We agree. The record shows that after the State rested its case and the trial court denied the defense motion for a directed verdict, Harris' trial counsel informed the court that he had discussed the right to testify with Harris and that he believed Harris was choosing not to testify. The court then advised Harris about his right to testify, and Harris confirmed on the record that he understood his right and was deciding freely and voluntarily not to testify. In denying this postconviction claim the district court also observed that any advice by trial counsel not to testify was reasonable because if Harris had testified, he would have been subject to cross-examination and his prior felony convictions likely would have been used to impeach him. The court also "found it reasonable for trial counsel to believe [Harris] would not have abided by court rules, not presented well to the jury, or would have made statements against his interest based upon his previous interactions with the court in this case." The court found it "was not an unreasonable trial strategy to force the State to prove its case without subjecting [Harris] to cross-examination." This assessment is consistent with our own review of the record.

Claim No. 23 is refuted by the record. Allegations of ineffective assistance which are affirmatively refuted by a defendant's assurances to the sentencing court do not constitute a basis

for postconviction relief. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). Because Harris cannot show that his trial counsel was ineffective with respect to this claim, he cannot show that his appellate counsel was ineffective for failing to raise this claim on direct appeal. The district court did not err in denying claim No. 23 without an evidentiary hearing.

### (vii) Failure to Seek Recusal of Prosecutor

Claim No. 24 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to object to prosecutorial misconduct and seek recusal of the prosecutor. He also alleges that his trial counsel was ineffective in failing to object and move to strike the bike patrol officers' "false testimony." He argues that the prosecutor committed prosecutorial misconduct because his case was built on the officers' false and misleading testimony about Harris and Fox being inside of a vehicle when first contacted by police and the false and misleading testimony by one of the bike patrol officers about an "alleged scale, razor blade, and two playing cards allegedly seized with the suspected controlled substances." Harris argues that if his trial counsel had asked the trial court to strike the officers' testimony and sought recusal of the prosecutor, he would have received "a fair trial with an unbiased prosecutor" and the jury most likely would have acquitted him of all counts.

The district court properly found Harris' allegations insufficient to warrant an evidentiary hearing on this claim. As noted by the court, Harris does not offer any supporting facts to indicate that the officers' testimony was false or any indication that the prosecutor was aware of any potential false testimony. And, with respect to the allegation about where Harris and Fox were when contacted by police, the court noted Fox's testimony that they were in the vehicle just before being approached by the officers. An evidentiary hearing is not required when a postconviction motion alleges only conclusions of fact or law without supporting facts. See *State v. Jackson*, 32 Neb. App. 563, 2 N.W.3d 203 (2024). See, also, *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021) (noting that conclusions of fact that are insufficient to warrant evidentiary hearing are often broad characterizations without specificity, such as allegation of "false" testimony). Harris cannot show that his trial counsel was ineffective for failing to raise this claim at the trial level or, relatedly, that his appellate counsel was ineffective for failing to raise the claim on direct appeal. The district court did not err in denying claim No. 24 without an evidentiary hearing.

### (viii) Failure to Seek Suppression of Marijuana and Cell Phones and Testimony About Those Items

Claim No. 25 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to move to suppress admission of the seized suspected marijuana and the cell phones and any testimony about those items. Harris argues that his trial counsel should have filed a motion in limine to exclude this evidence, which was "highly prejudicial," since he was not charged with any marijuana offenses and the evidence was simply used to make it appear that he was "a drug dealer." He argues that if trial counsel filed a motion in limine before trial or objected to the admission of this evidence at trial, there is a reasonable probability that it would have been excluded and he most likely would have been acquitted.

In denying an evidentiary hearing on claim No. 25, the district court noted the testimony of one of the bike patrol officers that having two cell phones on one's person at the same time is

uncommon and that they are commonly used for the sale of narcotics. The court also noted that the presence of marijuana corroborated the bike patrol officers' testimony that they smelled marijuana coming from the vehicle. The court also found that because Harris was located in the driver's seat of the vehicle with a baggie of controlled substances in plain view at his feet and $1,600 in his pocket, any prejudicial effect from evidence about the marijuana did not undermine confidence in the outcome of the case. The court also noted Harris' statement to officers after they found the controlled substances that Fox was not involved.

We agree that Harris cannot show prejudice from his trial counsel's failure to seek exclusion of evidence about the cell phones and marijuana. We further note that his motion only contains conclusory allegations without any facts showing support for exclusion of this evidence. Harris cannot show that his trial counsel was ineffective for failing to raise this claim at trial or that his appellate counsel was ineffective for failing to raise it on direct appeal. The district court did not err in denying claim No. 25 without an evidentiary hearing.

### (ix) Failure to Call Witness

Claim No. 26 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to investigate, interview, and call Reko Hoskins (individual to whom Harris allegedly sold the set of racing wheels with tires) as a defense witness. He argues that investigation of and testimony from Hoskins would have shown that Hoskins purchased a set of wheels from Harris on the day in question for $1,500 in cash, showing that the large amount of cash in Harris' possession was from something other than the sale of drugs. Harris argues that if his trial counsel had called Hoskins as a witness, he most likely would have been acquitted on all charges, or at least the charge of possession of money used in violation of § 28-416.

As noted by the district court, counsel need not interview every possible witness to have performed proficiently. See *State v. Newman*, 310 Neb. 463, 966 N.W.2d 860 (2021). The court concluded that Hoskins' testimony would have been immaterial to a finding of guilt on the charge of possession of money used in violation of § 28-416. We agree. There was evidence that Harris had possession of controlled substances (cocaine and cocaine base) and that the amount of controlled substances involved, as well as Harris' possession of items in addition to the controlled substances, including the cash found on his person, supported a conclusion that he was dealing drugs. Based upon the evidence, the jury could have reasonably found that Harris possessed the money with the intent that it be used in violation of § 28-416, regardless of any testimony by Hoskins. Harris cannot show that his trial counsel was ineffective for failing to raise this claim at trial or that his appellate counsel was ineffective for failing to raise it on direct appeal. The district court did not err in denying claim No. 26 without an evidentiary hearing.

### (x) Failure to Investigate Renter of Vehicle

Claim No. 27 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to trial counsel's failure to investigate Harris' actual innocence and interview Harris prior to trial. Harris argues investigation by his trial counsel would have revealed that a friend of Harris' had rented the vehicle in question, that Harris borrowed the vehicle from the friend because his own vehicle was in the shop, that Harris did not know anything about the controlled substances found in the vehicle, and that $1,500 of the cash found on Harris' person

- 14 -

was from the sale of a set of racing wheels. Harris argues that if his trial counsel had presented this information at trial, Harris most likely would have been acquitted on all counts.

The district court concluded, as with Harris' allegation about testimony from Hoskins, that any evidence about who had rented the vehicle was immaterial to Harris' guilt. The court noted that even if the vehicle had been rented by someone else and borrowed by Harris, there was still ample evidence to conclude that Harris possessed the baggie of controlled substances in plain view on the floorboard of the driver's side of the vehicle where Harris was sitting. We agree that Harris cannot show his trial counsel was ineffective for failing to bring this claim at trial or that his appellate counsel was ineffective in failing to raise it on direct appeal. The district court did not err in denying claim No. 27 without an evidentiary hearing.

### (xi) Failure to Raise Sufficiency of Evidence

Claim No. 28 alleges that Harris' appellate counsel was ineffective for failing to assign error on direct appeal to the sufficiency of the evidence to support his convictions. The district court found the record sufficient to affirmatively refute this claim. We agree.

Harris was convicted of possession with intent to deliver 10 to 27 grams of cocaine, in violation of Neb. Rev. Stat. § 28-416(7)(c) (Cum. Supp. 2018); possession with intent to deliver cocaine base, in violation of §28-416(1) and (2)(a); and possession of money used in violation of § 28-416(1) in violation of § 27-416(17). In his postconviction motion, he argues that the evidence was insufficient to show that he possessed with intent to deliver any controlled substance or that he possessed drug money. Harris argues that he was convicted through the use of "unreliable, irrelevant and inadmissible evidence, and false testimony."

A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence. *Id.* Circumstantial evidence may support a finding that a defendant intended to distribute, deliver, or dispense a controlled substance in the defendant's possession. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Circumstantial evidence sufficient to establish possession of a controlled substance with intent to deliver may consist of evidence of the quantity of the substance, equipment and supplies found with the substance, the place where the substance was found, the manner of packaging, and the testimony of witnesses experienced and knowledgeable in the field. *Id.*

We note, as did the district court, the evidence showing that Harris was in the driver's seat of the vehicle before the bike patrol officers approached and that a baggie of controlled substances was found in plain view on the floor of the driver's compartment of the vehicle, Harris' statement after officers found the controlled substances that Fox was not involved, Fox's statement that she did not know there was cocaine in the vehicle, the $1,600 in cash found on Harris' person and other evidence supporting a conclusion that he was dealing drugs, and evidence as to the weight of the controlled substances seized and showing that those substances were cocaine and cocaine base. We agree that even if Harris' appellate counsel had assigned error to the sufficiency of the evidence to support Harris' convictions, it would not have succeeded. Harris cannot show that his appellate counsel was ineffective for failing to raise this claim on direct appeal. The district court did not err in denying claim No. 28 without an evidentiary hearing.

### 2. DENIAL OF MOTION TO APPOINT COUNSEL
### AND FOR DECLARATORY RELIEF

Harris asserts that the district court erred in denying his motion for appointment of counsel and declaratory relief.

#### (a) Postconviction Counsel

Under the Nebraska Postconviction Act, it is within the discretion of the trial court to decide whether counsel shall be appointed to represent the defendant. *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023). Where the alleged errors in the postconviction petition before the district court are either procedurally barred or without merit, thus establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint postconviction counsel for an indigent defendant. *Id.* As set forth above, Harris' claims of ineffective assistance of counsel are without merit. Accordingly, the district court did not abuse its discretion in denying his request for appointment of counsel.

#### (b) Declaratory Relief

In his motion for appointment of postconviction counsel, Harris also set forth a request for declaratory relief, essentially asking the district court to find the Nebraska Postconviction Act unconstitutional as it applied to him as a self-represented litigant. The court entered two orders ruling on the declaratory relief portion of Harris' motion. In December 2022, the court overruled Harris' "purported motion for declaratory relief." Then in August 2023, the court found that because Harris' motion did not comply with local court rules, it was "deemed abandoned" and was dismissed. In making this ruling, the court cited Rules of Dist. Ct. of Third Jud. Dist. 3-2(A) and (B) (rev. 2022), which specifies in subsection (A) that "[w]hen any motion requiring a hearing is filed, it shall be filed with a notice of hearing with a date, time, manner of hearing, and certificate of service . . . not less than 5 days prior to hearing. . . ." The rule also provides in subsection (B) that "[f]ailure to file a notice of hearing and certificate of service within 10 days after filing a motion will be deemed an abandonment of the motion without further action by the court."

Harris' motion did not include a notice of hearing and certificate of service and the record does not include any subsequently filed separate notice of hearing and certificate of service. In his brief on appeal, he only argues that a declaration must be issued that the Nebraska Postconviction Act "is unconstitutional as it applied to [him]." Harris has not specifically argued this portion of his assignment of error or otherwise shown that the district court's ruling was in error, and we do not consider it further. See *State v. Yates*, 32 Neb. App. 555, 2 N.W.3d 197 (2024) (alleged errors of lower court must be both specifically assigned and specifically argued in brief of party asserting errors to be considered by appellate court).

### 3. DENIAL OF MOTION FOR JUDGE-WRITTEN FINDINGS

Harris asserts that the district court erred in denying his motion for judge-written findings. He argues the court's "mechanical adoption verbatim" or "'rubber stamping'" of the order "ghostwritten" by the State is an abandonment of the court's judicial duties, fundamentally unfair, and a violation of Harris' constitutional rights. Brief for appellant at 32.

At the conclusion of the June 5, 2023, hearing, the district court asked the parties to submit proposed orders addressing the need for an evidentiary hearing on Harris' postconviction motion. Harris did not object to this procedure, and he confirmed that he could have his proposed order to the court within 14 days. He did not file his motion for judge-written findings until September 6, three months after the hearing and nearly a month after the court's August 10 order ruling on his postconviction motion. Harris waived any claim of error to the procedure proposed at the June 5 hearing by his failure to object at that time. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024). We also note that although findings drawn by the trial court itself are more helpful to the appellate court, findings prepared by counsel and adopted verbatim by the trial judge are formally the judge's and will stand if supported by evidence. *Wayne L. Ryan Revocable Trust v. Ryan*, 308 Neb. 851, 957 N.W.2d 481 (2021). See, also, *State v. Hill*, 308 Neb. 511, 955 N.W.2d 303 (2021) (observing in passing that it is not inappropriate for court to track language of party's submission).

As to the district court's actual ruling on Harris motion for judge-written findings, we note that on September 7, 2023, the day after filing his motion for judge-written pleadings, Harris filed a notice of appeal, motion to proceed in forma pauperis, and poverty affidavit. A poverty affidavit serves as a substitute for the docket fee otherwise required upon appeal, and an in forma pauperis appeal is perfected when the appellant timely files a notice of appeal and a proper affidavit of poverty. *Haynes v. Nebraska Dept. of Corr. Servs.*, 314 Neb. 771, 993 N.W.2d 97 (2023). Nebraska case law generally holds that once an appeal has been perfected, the trial court is divested of its jurisdiction to hear a case involving the same matter between the same parties. See *Dugan v. State*, 297 Neb. 444, 900 N.W.2d 528 (2017). See, also, *State v. Beyer*, 260 Neb. 670, 619 N.W.2d 213 (2000) (after appeal has been perfected to appellate court, lower courts are divested of subject matter jurisdiction over that case). Accordingly, the court correctly determined in its September 15 order that it was without jurisdiction to rule on Harris' motion for judge-written findings. This assignment of error fails.

## VI. CONCLUSION

The district court did not err in denying Harris' motion for postconviction relief without an evidentiary hearing. The court did not abuse its discretion in denying Harris' motion for appointment of counsel, and Harris has not shown that the court erred in its ruling on the declaratory relief portion of that motion. The court correctly determined that it was without jurisdiction to rule on Harris' motion for judge-written findings.

AFFIRMED.